**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| YaTasia D. Flemming | |
| Plaintiff, | No. 25-cv-02441 |
| v. | Judge Franklin U. Valderrama |
| Guaranteed Rate Affinity, LLC, et al | |
| Defendants. | |

**ORDER**

Plaintiff YaTasia Flemming (Flemming) purchased the property at 7112 S. Rhodes Avenue, Chicago, Illinois (the Property). R.59, Am. Compl. Ex. A.[1] As part of the transaction, Flemming obtained a loan from Guaranteed Rate Affinity, LLC ("Guaranteed Rate") to purchase the Property. Stewart Title Company ("Stewart Title") acted as the closing agent for the transaction. The loan was later assigned to PennyMac Loan Services, LLC ("PennyMac"). Flemming fell behind in her mortgage payments and PennyMac, represented by the Law Offices of Ira T. Nevel ("Ira Nevel"), filed a foreclosure action against Flemming in state court[2]. A judgment of foreclosure was entered and the Property sold at judicial sale. Flemming, proceeding *pro se*, sued Guaranteed Rate, PennyMac, Stewart Title, Ira Nevel and Mariyana Spyropoulos, Clerk of the Circuit Court of Cook County (collectively, Defendants), asserting claims for, among other things, unjust enrichment and fraudulent conversion. R.1, Compl; Am. Compl.

Before the Court are Defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). R. 79, Guaranteed Rate Def. Mot. Dismiss; R. 80, PennyMac and Ira Nevel Defs. Mot. Dismiss; R. 83, Mariyana Spyropoulos, Clerk of Cook County Def. Mot. Dismiss; R. 85, Stewart Title Co. Def. Mot. Dismiss. As explained further below, Flemming's claims are dismissed for lack of jurisdiction. The Court therefore need not address the remaining dismissal arguments.

**Legal Standard**

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.
[2] *PennyMac Loan Service, LLC v. YaTasia D. Flemming*, No. 2022-CH-10843.

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a complaint over which the court lacks subject matter jurisdiction. See Fed. R. Civ. P. 12 (b)(1); *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The Court begins with analysis of subject matter jurisdiction, "because if the Court lacks subject matter jurisdiction, then it must go no further and dismiss the lawsuit." *Shophar v. Sloan*, 2023 WL 12088183 (N.D. Ill. Mar. 24, 2023). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (internal citations omitted). A factual challenge on the other hand, contends that "there is in fact no subject matter jurisdiction even if the pleadings are formally sufficient." *Apex Dig., Inc.* 572 F.3d at 444. Here, the Defendants argue that the Court lacks jurisdiction over Flemming's claims based on the *Rooker-Feldman* doctrine.

Importantly, "[f]ederal district courts do not have jurisdiction to overturn state-court findings." *Evans v. Carrington Mortg. Servs., LLC*, WL 2772249, at *1 (W.D. Wis. Sept. 26, 2025) (citing *Gilbank v. Wood Cnty. Department of Human Services*, 111 F.4th 754, 768 (7th Cir. 2024)). This is called the *Rooker-Feldman* doctrine, which derives its name from two United States Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments because no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (internal quotation marks omitted).

In order for the *Rooker-Feldman* doctrine to apply, four elements must be met: "*First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment." *Gilbank*, 111 F.4th at 766. In the Seventh Circuit, there is an

additional element: the *Rooker-Feldman* doctrine does not bar jurisdiction over a plaintiff's federal claim if the state-court loser did not have a reasonable opportunity to raise the federal issue in state court. *Id*.

**Analysis**

**I.     *Rooker-Feldman* Doctrine**

To determine whether the *Rooker-Feldman* doctrine applies, the Court takes judicial notice of the state-court proceedings concerning the Property. *See Carter v. J.P. Morgan Chase Bank*, 2017 WL 1304117, at *2 (N.D. Ill. Apr. 7, 2017), *aff'd sub nom.*, 693 F. App'x 461 (7th Cir. 2017). Here, the state court determined that (a) Flemming had defaulted on her payment obligations under the Mortgage and Note[3]; (b) PennyMac had complied with Illinois laws governing foreclosure proceedings, including the requirements for filing a proper foreclosure complaint[4]; (c) PennyMac was entitled to judgment of foreclosure[5]; and (d) PennyMac was entitled to possession of the Property[6].

Turning to the *Rooker-Feldman* elements, in order to find that a federal suit is barred, the Court must first find that Flemming lost in state court. A foreclosure judgment was entered in the Circuit Court of Cook County on January 21, 2025, thus this element is satisfied[7]. *See Kinzy v. Howard & Howard, PLLC,* 2019 WL 95152, at *1 (N.D. Ill. Jan. 3, 2019) ("The Kinzys lost when the state court entered a judgment of foreclosure against them in July 2015."). Second, the state-court judgment was finalized before the federal proceedings began. A state-court foreclosure judgment becomes final when the "sale, confirmation, and post confirmation judgments have occurred." *Bryant v. Chupack,* 93 F.4th 1029, 1032 (7th Cir. 2024). Here, judicial confirmation of the sale occurred on January 1, 2025.[8] Flemming filed this suit on March 7, 2025. R. 1, Compl. The second element of the *Rooker-Feldman* doctrine is satisfied.

The third and fourth elements of the *Rooker-Feldman* doctrine are at issue here. For Flemming's federal suit to be barred, the state-court judgment must have caused the alleged injury underlying the federal claim and the claim must invite the federal district court to review and reject the state-court judgment. *See Gilbank*, 111 F.4th at 766. Flemming denies that *Rooker-Feldman* applies as she claims she is challenging "independent federal violations before, during, and after the state foreclosure proceedings." R. 96, Pls. Opp. Mot. Dismiss at 3. According to Flemming she "is not seeking to overturn the state court judgment itself but to address the

---

[3] PennyMac and Nevel Defs. Mot. Dismiss Ex. C.

[4] *Id*. at Ex. D.

[5] *Id*. at Ex. F.

[6] *Id*. at Ex. G.

[7] *Id*. at Ex. E.

[8] *Id*.

3

misconduct that infected it and continues through ongoing debt enforcement efforts against" her. *Id.*

Liberally construing Flemming's amended complaint, Flemming seeks judicial review of the state court's order. Flemming's prayer for relief undermines her contention that her federal claims are independent of her state court claims. *See Wortham v. Vill. of Barrington Hills*, 2026 WL 1662115, at *2 (7th Cir. June 9, 2026) ("We consider the relief the plaintiff requests to determine if the plaintiff has indeed asked the court to reject a state court judgment.") (internal citation omitted). In her prayer for relief, Flemming seeks "a writ of mandamus directing Defendant to file forthwith certified evidence establishing personal jurisdiction over Plaintiff in the Underlying Action, or show cause why its order should not be declared void" and to "[s]tay enforcement of the foreclosure orders." Am. Compl. at *11. The amended complaint makes clear that the "Underlying Action" referenced in the prayer for relief refers to the state court case, as "[i]n the underlying action, Defendant(s) alleged that Plaintiff defaulted on a mortgage…" *Id.* ¶ 29. Regardless of the merits of Flemming's claims of fraud or unjust enrichment, the specific relief she seeks would necessarily require the Court to set aside the foreclosure judgment, which is barred by the *Rooker-Feldman* doctrine. *See Banister v. S. Holland Police Dep't,* 2017 WL 2813660, at *4 (N.D. Ill. June 29, 2017) (noting that "*Rooker–Feldman* has been frequently applied to claims stemming from a state's foreclosure judgment"); *David v. McCalla Raymer Leibert Pierce*, 2026 WL 879732, at *5 (N.D. Ill. Mar. 30, 2026) ("the elements required for application of the *Rooker-Feldman* doctrine all apply: the Wilsons lost in state court; the judgment in the foreclosure action was entered on March 20, 2024, and the Wilsons brought this suit on April 23, 2025; the judgment caused the alleged deprivation of property; the Court cannot rule in favor of the Wilsons in this suit without reviewing and rejecting the state-court judgment"); *cf Santoyo v. Rivera,* 2025 WL 1736830, at *2 (N.D. Ill. June 23, 2025) ("a party who loses in state court may raise precisely the same legal issues in federal court, so long as the relief sought in the federal action would not reverse or undo the relief granted by the state court") (citation omitted).

Flemming's prayer for relief reveals her intent in the federal litigation. Flemming seeks (a) to compel the state court to file evidence establishing personal jurisdiction in the foreclosure action; (b) show cause orders why the state court's foreclosure orders should not be declared void; (c) a stay of enforcement of the foreclosure orders; and (d) return of any income-withholding as a result of the foreclosure judgment. *See* Am. Compl at *11. The relief Flemming seeks unequivocally requires this Court to "undo" or "overturn" the state-court judgment, in contravention of *Rooker-Feldman. See Gilbank*, 111 F.4th at 771 ("Where the only injury underlying a claim was caused by the state-court judgment, there is simply no sensible way to separate the injury from the judgment that caused it. Redressing the injury—regardless of the form of relief requested—necessarily requires a federal court to review and reject the state-court judgment. Whether the claim asks the

federal court to undo the state-court judgment or to compensate the state-court loser for injuries caused by that judgment, the result is the same: the state-court loser is in substance appealing her loss to the federal district court, seeking review and rejection of the state-court decision.").

Flemming's argument that her federal claims are independent of the state court action is further undermined by the amended complaint, which repeatedly references the state court action and requests that this Court reject it. *See* Am. Compl. ¶ 1 ("Plaintiff seeks to compel a lower tribunal acting under federal authority to perform a nondiscretionary duty); ¶ 4 ("[Defendants] conducted wrongful foreclosure proceedings against Plaintiff"); ¶ 17 ("[Defendants] filed a wrongful foreclosure suit in the Chancery Court, case number 2022CH10843 alleging a default… These erroneous allegations lack standing, personal matter jurisdiction, subject matter jurisdiction and violates plaintiffs right to due [process]"); ¶ 28 ("[Defendants] commended a wrongful foreclosure action"); ¶ 29 ("In the underlying action, Defendant(s) alleged that Plaintiff defaulted on a mortgage but introduced no evidence that Plaintiff caused any injury-in-fact to PennyMac or Guaranteed Rate"); ¶ 30 ("Despite absence of evidence of injury of indebtedness or authority to collect on said debt, Defendant(s) James A. Wright entered a judgment imposing a wrongful judicial foreclosure sale and December 23rd 2024 authorizing the wrongful eviction of Plaintiffs real property despite Plaintiffs many efforts to correct the record"); *11 ("Plaintiff is entitled to a writ of mandamus compelling Defendant to (a) produce lawful record of evidence demonstrating personal jurisdiction over Plaintiff or, if none exists, (b) vacate its orders in the Underlying Action."). Flemming's opposition to Defendants' motions to dismiss further illustrate her intent with her federal action. Although she states that she is "not seeking to overturn the state judgment itself," she follows that she is trying to "address the misconduct that infected [the state-court judgment] and continues through ongoing debt enforcement efforts against her[]" as a result of the state-court judgment. Pls. Opp. Mot. Dismiss at 3. This is precisely what *Rooker-Feldman* prohibits.

Flemming's arguments as to the independence of her federal claims are also belied by references to "Defendant James A. Wright," who is noted to have "entered a judgment imposing a wrongful judicial foreclosure" against Plaintiff. Am. Compl. ¶ 20(b); 30. The Honorable James A. Wright presided over Flemming's foreclosure proceedings in state court.[9] As the Seventh Circuit has noted, "[s]omeone who wants to present a claim that is assertedly independent of the state litigation embarrasses that effort by suing the state judge, which leads the federal court to think that the state-court judgment is exactly what the federal suit concerns." *Bryant*, 93 F.4th at 1033.

With all four elements met, the Court asks whether Flemming had a reasonable opportunity to raise her claims of alleged misconduct during the

---

[9] PennyMac and Nevel Defs. Mot. Dismiss Ex. C.

foreclosure action and concludes that she did. "[S]tate law must have effectively precluded raising the issue in state court for the federal plaintiff to succeed on a no reasonable opportunity argument." *Gilbank,* 111 F.4th at 778-79 (internal citation omitted). This is a narrow exception that has been carefully limited to protect the *Rooker-Feldman* doctrine. *Id.* at 779 ("Only twice have we found the federal plaintiff had no 'reasonable opportunity' to raise the federal issue in state court."). Notably, Flemming does not contend that she was denied this opportunity. To the contrary, the state court record reflects ample opportunity for Flemming to raise the issues she now claims in federal court. Not only did Flemming appear in the state court action, she brought counterclaims against PennyMac.[10] After the foreclosure judgment was entered, Flemming did not appeal the judgment. The Court finds that no facts exist to find a lack of reasonable opportunity.

In sum, *Rooker-Feldman* bars the Court's exercise of subject matter jurisdiction in this case.

## II.    All Writs Act or Mandamus Jurisdiction

Flemming's invocation of subject matter jurisdiction pursuant to the All Writs Act or the Mandamus statute does not save her complaint. According to Flemming, the Court has subject-matter jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). Defendants disagree that the All Writs Act is appropriate and the Court agrees. The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act, however, does not provide an independent basis for jurisdiction and does not create a private cause of action." *Edelson PC v. Bandas Law Firm PC.,* 2018 WL 723287, at *13 (N.D. Ill. Feb. 6, 2018). In the alternative, Flemming invokes the Mandamus Act, 28 U.S.C § 1361, as providing the Court with jurisdiction. That endeavor also fails. Mandamus is a "drastic remedy traditionally used to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so." *United States v. Lapi,* 458 F.3d 555, 560–61 (7th Cir. 2006). The Mandamus Act only confers federal jurisdiction "in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C § 1361. The statute does not apply to private actors like Defendants Guaranteed Rate, Stewart Title, PennyMac, or Ira Nevel. *See United States v. Wesson*, 33 F.3d 788, 798 (7th Cir.1994) (affirming district court's conclusion that it lacked authority "to issue a writ of mandamus against a private attorney in a dispute with his client"); *Lawrence v. Rivers*, 1993 WL 34792, at *1 n. 1 (N.D. Ill. Feb. 9, 1993) ("Clearly, a writ of mandamus will not issue against a private actor."). Accordingly, Flemming has not stated a claim for relief under the mandamus authority of this Court and the Court lacks jurisdiction to give her the relief she seeks by way of her petition for a writ of mandamus.

---

[10] *Id.* at Ex. C, Entry of April 7, 2023.

## III. State Officials

Defendant Mariyana Spyropoulos, Clerk of the Circuit Court of Cook County, separately argues this Court lacks subject matter jurisdiction over her and the claims against her must be dismissed. Since she is sued in her official capacity, asserts the Clerk, Flemming's claim is barred by Eleventh Amendment immunity. The Court agrees.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. CONST. amend XI. The Eleventh Amendment deprives federal courts of jurisdiction to consider "[a]ll suits against a state or its agencies" unless the state "consents to suit in federal court or Congress uses its power under the Fourteenth Amendment to abrogate the state's Eleventh Amendment immunity." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). "State agencies and officials sued in their official capacities are 'the state' for Eleventh Amendment purposes." *Olison v. Governor Ryan*, 2000 WL 1263597, at *4 (N.D. Ill. Sept. 5, 2000) (citation omitted); *see also Ind. Prot. and Advoc. Servs. v. Ind. Fam. and Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th. Cir. 2010) ("If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.") (citation omitted). District courts have consistently found that a Clerk of the Circuit Court is an Illinois State official. *See Harris v. Martinez*, 2023 WL 3504930, at *6 (N.D. Ill. May 17, 2023) ("Defendant, the Clerk of the Circuit Court, is an Illinois state official."); *Erkins v. Brown*, 2016 WL 3157600, at *16 (N.D. Ill. June 7, 2016) ("Under Illinois law, circuit court Clerks—like Brown—are actually state employees, even though their offices cover counties."); *Ibikunle Sunday Fayemi v. Pucinski*, 155 F. Supp. 2d 944, 948 (N.D. Ill. 2001) ("The Clerk of Court is a state employee and, consequently, is a state agent for purposes of Eleventh Amendment immunity."); *Bolden v. WestAmerica Mortgage Co.*, 1998 WL 704165, at *8 (N.D. Ill. Sep. 28, 1998) ("Under Illinois law, the Clerk of the Circuit Court of Cook County is a state, not a county, official.").

However, a private party may "sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *MCI Telcoms Corp.v. Illinois Bell Tel. Co.*, 222 F.3d 323, 337 (7th Cir. 2000). County officials can be "treated as state officials for Eleventh Amendment purposes when carrying out non-discretionary duties subject to state policy control." *Cassell v. Snyders*, 990 F.3d 539, 552 (7th Cir. 2021) (citation omitted). Here, Flemming sues the Clerk of the Circuit Court in her official capacity. While Flemming argues that she does not seek damages against the Clerk, presumably because she knows such a claim is dead on arrival, she maintains that she seeks injunctive relief. But the complaint does not reveal, nor does her response explain, how she is still facing imminent harm from any continuing

wrongdoing. The Court therefore dismisses Flemming's claims against Mariyana Spyropoulos, Clerk of the Circuit Court of Cook County, with prejudice.

## Conclusion

Given the Court lacks jurisdiction, it cannot and need not address Defendants' remaining arguments. Indeed, "[w]here *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

The Court dismisses Flemming's case with prejudice.

Date:  7/29/2026

United States District Judge
Franklin U. Valderrama